439 P.2d 283

**RELIANCE NATIONAL LIFE INSURANCE COMPANY, Plaintiff and Respondent,**

v.

**James E. CAINE, dba Caine Agency, Defendant and Appellant.**

No. 10940.

Supreme Court of Utah.

March 28, 1968.

Merrill K. Davis, Salt Lake City, for appellant.

J. Grant Iverson, of Moffat, Iverson & Taylor, Salt Lake City, for respondent.

TUCKETT, Justice.

This action was commenced by the plaintiff, herein referred to as Reliance, on October 13, 1956. Reliance seeks to recover from the defendant money advanced to the defendant and for insurance premiums collected by the defendant and not paid over to Reliance. The defendant, by way of a counterclaim, prays for an accounting between himself and Reliance and for a judgment in his favor if the accounting shows he is entitled thereto.

On February 1, 1956, Reliance and Caine entered into an employment contract whereby Caine was employed as agency supervisor for Reliance. The agreement continued in effect until July or August of 1956, at which time a dispute arose between the parties which resulted in the resignation

of Caine on October 20, 1956. At the time Caine left Reliance, or shortly thereafter, seven agents of Reliance also left the Insurance Company. Some of the agents later joined Caine in another insurance venture in the state of Nevada.

The employment contract entered into between Reliance and Caine contained a forfeiture provision which provided in part as follows:

Should the supervisor at any time endeavor to induce representatives of the company to discontinue their contract, or its policyholders to relinquish their policies * * * the agency supervisor shall forfeit any and all commission interest that he might otherwise have acquired under any and all contracts with the company.

During the year 1960, the case was tried by the court without a jury at various times and on a piecemeal basis. On May 3, 1967, the court entered its findings and judgment from which Caine appeals to this court. The court found that Reliance was entitled to judgment in the sum of $6,762.73. The court further found that Caine endeavored to induce several agents of Reliance to discontinue their employment, and that by reason of the forfeiture provision of the employment contract, he had forfeited all sums due or to become due thereunder.

The defendant here contends that the findings and judgment of the court are not

supported by the evidence at the trial. It should be observed that counsel who represented the defendant during the trial withdrew thereafter, and that the defendant has employed other counsel to represent him on appeal.

There is only a partial record of the testimony before this court. The record contains the transcript of the testimony of the witnesses who were sworn and testified on August 1, 1960. It is conceded that the testimony taken on that day does not support the court's findings and judgment. It appears that the case was heard by the court on various days, and that various reporters took the testimony of the witnesses, and that it cannot now be determined from the court's records what reporters were in attendance on the court during the hearings other than the one on August 1, 1960. It appears now that it is impossible to secure a record of the testimony on the other days of the trial.

After the appeal to this court had been docketed counsel for Reliance discovered that the record was not complete. He then made application to the trial court for an order to supplement the record, and in support of the motion he filed with the court an affidavit of Jack Fletcher to the effect that during the year 1960, he was employed by Reliance as treasurer and keeper of its financial records; that during the summer of 1960 he had been a witness for Reliance in the present litigation. The affidavit further stated that he had before him during his testimony the records of the company, and that the records showed that Caine owed between six thousand and seven thousand dollars to the plaintiff. The motion was also supported by an affidavit of counsel for the plaintiff to the effect that during the trial Jack Fletcher testified that the records of Reliance disclosed that the defendant was indebted to the plaintiff in the sum of $6,762.73. At a hearing upon the motion on January 11, 1968, the court certified that during the trial of the cause in 1960 the said Jack Fletcher had testified as above set forth.

As a part of the record before this court there appears a stipulation entered into by the parties dated November 23, 1960, wherein the parties agreed that before an accounting could be made from the books of the company determining whether or not a balance existed in favor of Reliance or the defendant, it was first necessary that the court determine certain matters of law relating to the forfeiture provision of the contract. A part of that stipulation is as follows:

That before this matter can be properly and fully adjudicated the court must decide whether the evidence is such as to require a forfeiture as described in Paragraph 10 of the agency's supervisor's contract.

It would appear that Caine's contention was that Reliance had breached the contract

and that by reason of the breach Reliance was barred from declaring a forfeiture. Whatever evidence was before the court respecting these matters is no longer available.

It will be noted that the efforts of court and counsel to supply by affidavits and a certificate a record of testimony which supports the court's findings and judgment only go to one issue of fact. It appears that there are other issues upon which the court undoubtedly took testimony and upon which findings should have been made but that testimony is not here for review.

We have no rule or statute to guide us in this situation. An important fact in this case is that the long delay in submitting findings and judgment to the court by the prevailing party contributed to the impossibility of obtaining a transcript of the testimony at the time of the appeal. We cannot review the evidence to determine whether it supports the court's finding and we are of the opinion that the deficiency can only be corrected by a trial de novo.[1]

The judgment of the court below is reversed and the matter is remanded for a new trial. No costs awarded.

CALLISTER and HENRIOD, JJ., concur.

CROCKETT, Chief Justice (concurring specially).

I concur in the opinion of Justice Tuckett remanding the case for trial. It does not take the position that the judgment is invalid, but simply that on the state of the record it is impossible to tell whether it is valid and sustainable or not. I have no particular disagreement with the principles of law expressed by Justice Ellett, nor with Rule 75(m) U.R.C.P. Nevertheless, no rule should be so absolute as to apply even where it works an obvious injustice. Due to the particular fact situation in this case: where there have been a number of hearings over a period of about seven years before the judgment was entered; where there are essential issues which it is impossible to review properly because of the unsatisfactory state of the record; and where this situation appears to be largely due to the fault of the plaintiff, I agree that the ends of justice will be best served by remanding the case for trial.

ELLETT, Justice (dissenting).

I dissent. The main opinion presumes the judgment of a court of record to be invalid without any showing of the record to that effect. This is at variance with the general law in the United States as set out in 30A, Am.Jur., Judgments § 28:

A judgment is, under general rules applicable to the subject, not presumed to be erroneous, but, to the contrary, is

1. J. W. Ripey & Son v. Art Wall Paper Mill, 27 Okl. 600, 112 P. 1119; Woods v. Bottmos (Mo.App.) 206 S.W. 410;

Shafer v. King, 82 Colo. 258, 259 P. 1042. See also 13 A.L.R. 111, 107 A.L.R. 606.

presumed to be valid until vacated by some proper proceeding instituted directly for the purpose of correcting errors therein, where the judgment is within the jurisdiction of the court rendering the same. Under such circumstances the judgment so rendered raises a presumption that the court acted impartially, honestly, justly, after due consideration, for good reason, correctly, in conformity to law, and in accordance with its duty; that the proceedings were regular, in conformity with settled usage, sufficient to support the judgment, and based upon proper grounds; and that every requisite, including the pleadings, and every fact necessary to sustain the judgment, was present, except where negatived by the record. * * *

Until this day the law in Utah has been in harmony with that set out above, as is shown by the decision in the case of Watkins v. Simonds, 14 Utah 2d 406, at page 407, 385 P.2d 154, at page 155, wherein the court said of the Utah Reports:

At no place in the record on appeal is there any indication as to what evidence was stipulated to in the chambers of the trial court; apparently no written stipulation of such evidence was prepared, for such is not a part of the record; and no stenographic transcript of such stipulation, if there was one, is part of the record. Apparently, no oral evidence was taken, as there is no transcript of any such evidence in the record. In short, no evidence of any kind or character, oral, stipulated or otherwise, appears in the record before this Court. * * *

Judgments of courts are presumed to be correct if nothing in the record appears to the contrary, and all doubts are resolved in their favor. The record on appeal in this cause being devoid of any and all evidence, it must be assumed that the proceedings in the court below established a sufficient basis to support and justify the court's findings, conclusions and judgment. (Citations omitted.)

In the Watkins case there was no showing made that the record was not available, but that should not in the absence of unusual circumstances change the basic principles of law that judgments of a court of record are presumed to be valid in the absence of a showing to the contrary.

In the instant case there is more than a presumption of validity of the judgment. There is sufficient in the record before this court to sustain the judgment of the trial court. True it is that there was a long delay between the filing of the complaint and the entry of the final judgment, but the delay is not grounds for holding the judgment invalid. There is no claim of any estoppel in the matter. The fact is that the defendant has lived outside of Utah for most of the time since the complaint was filed. He has been represented by four

lawyers with long intervals of time in between when he had no counsel at all. On one occasion after his lawyer withdrew he did nothing for over two years, and then he appointed another attorney only after being notified to do so by the plaintiff.

After a hearing of the instant matter the trial court on January 5, 1961, entered a memorandum decision as follows:

The above entitled matter came on regularly for hearing before the above entitled Court. Evidence was adduced on behalf of both parties; the matter was submitted; depositions and statements were furnished, and the Court now being fully advised in the premises makes the following findings:

1. That the plaintiff is entitled to a judgment against the defendant for the sum of $6,762.73. The Court makes this finding based upon the following:

(A) That any prior breach by the plaintiff, if any, would not be a bar to the application of the forfeiture provision of the agency supervisor contract; and

(B) That the evidence indicates clearly that the forfeiture provision should be applied, and particularly in view of the evidence adduced upon the depositions submitted with the statements of the parties.

\* \* \* \* \* \*

It is no fault of the plaintiff that the clerk's minutes do not allow the defendant to ascertain which court reporter took the various proceedings at trial. If no reporter was present, it was as much the responsibility of the defendant as of the plaintiff to see that one was in attendance.

The plaintiff apparently assumed the memorandum decision of the trial judge as set out above to be equivalent to a judgment, but when the defendant came to Utah on March 17, 1966, and questioned the matter, the plaintiff refreshed the memory of the trial judge (who for all we know needed no refreshing) as follows:

(A) It filed an affidavit of the former treasurer and record keeper of the plaintiff wherein he said that he was a witness in the case at the time of trial; that he now remembers that he testified that the defendant owed plaintiff an amount somewhere between six thousand and seven thousand dollars.

(B) Its counsel certified that at the trial of the matter the treasurer testified that the defendant owed plaintiff the sum of $6,762.73.

(C) The judge's memorandum decision was before the court.

In addition thereto, there were two depositions taken of the witnesses Mortensen and Cosby, one on August 8, 1960, and one on August 22, 1960. These were received

by the judge on January 5, 1961, the date of the memorandum decision.

The defendant claims that these depositions were not before the court because they were received without being sealed.

What occurred is rather obvious as shown by the following facts in the record of this case:

The hearing was held on August 1, 1960. At that hearing the following occurred:

MR. IVERSON: If the Court please, I would be very pleased to submit within the next two weeks a deposition, within which Counsel may cross-examine this witness if he wants, or if it please the Court, if the Court would care to take a few minutes of the Court's time, to cross-examine. But I think we could do it in a very short manner with a deposition.

I, therefore, make the motion, instead of introducing the statement of Mr. Mortensen, that I be permitted to submit, within two weeks, an affidavit covering the matters set forth in this agreement, in which Counsel may have a right to cross-examine the witness.

MR. LARSON: And will you make him available so that I can cross-examine him?

MR. IVERSON: Oh, yes, we will make him available. I will represent to the Court that he comes to Salt Lake every weekend, and I am certain that I won't have difficulty in getting this.

MR. LARSON: All I want is a right to cross-examine.

MR. IVERSON: It would be fair to the Court to make a deposition available. May the order be that we submit a short deposition on this matter?

MR. LARSON: That will be fine.

MR. IVERSON: That is all that we have then, your Honor.

On November 23, 1960, the defendant's counsel gave to the court "Defendant's Statement of Case," and therein he refers to the testimony given in the depositions of Mortensen and Cosby. On the same date the plaintiff's counsel gave "Plaintiff's Statement of Case" to the court, and he refers to the testimony in the deposition of Cosby.

The deposition of Mortensen was taken pursuant to the agreement and for the purpose of being considered by the court, and the court did consider it before making his ruling in the memorandum decision. The parties intended that the judge read the deposition when submitted to him and never intended that he hold another session of court just for the purpose of ordering the deposition to be opened and published.

**434**

The main opinion completely overlooks Rule 75(m) of the Rules of Civil Procedure which is as follows:

Appeals When No Stenographic Report Available. In the event no stenographic report of the evidence or proceedings at a hearing or trial was made, or is available, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, for use instead of a stenographic transcript. This statement shall be served on the respondent who may serve objections or propose amendments thereto within 10 days after service upon him. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the court in the record on appeal.

The appellant made no effort whatsoever to comply with this rule, although the respondent did in a measure comply therewith. The burden is upon the appellant to show error and this rule allows him a method of doing so under the circumstances of this case. He has failed in that regard, and this case should not be sent back for a new trial.

The trial court should be affirmed in this matter, and the plaintiff (respondent) should have its costs.